UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INDIAN HARBOR INSURANCE COMPANY

                    Petitioner,

-against-

BUILD GROUP, INC.,

                    Respondent.

---

No. 24-CV-4887 (LAP)

OPINION AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Petitioner Indian Harbor Insurance Company ("Indian Harbor") brought this action to compel Respondent Build Group, Inc. ("Build Group") to participate in arbitration. (See Petition to Compel Arbitration ("Petition" or "Pet."), dated June 27, 2024 [dkt. no. 1].)[1]  In response, Build Group filed an opposition brief seeking a stay of these proceedings and, in the alternative, dismissal under Federal Rules of Civil Procedure 12(b)(2), (b)(3), and (b)(6).  (See Respondent Build Group, Inc.'s Opposition to Petitioner Indian Harbor Insurance Company's Petition to Compel Arbitration and Respondent Build Group, Inc.'s Motion to Stay or

---

[1] (See also Notice of Petition to Compel Arbitration, dated June 27, 2024 [dkt. no. 3]; Memorandum of Law in Support of Petitioner Indian Harbor Insurance Company's Petition to Compel Arbitration ("Pet. Brief"), dated June 27, 2024 [dkt. no. 6]; Declaration of Amy J. Kallal in Support of Petitioner Indian Harbor Insurance Company's Petition to Compel Arbitration ("Kallal Decl."), dated June 27, 2024 [dkt. no. 4]; Memorandum of Law in Support of Petitioner Indian Harbor Insurance Company's Petition to Compel Arbitration and, to the Extent Necessary, Opposition to Build Group's "Motion" to Stay or Dismiss ("Pet. Reply"), dated August 23, 2024 [dkt. no. 17].)

Dismiss the Petition ("Opposition" or "Opp'n"), dated August 2, 2024 [dkt. no. 14].)[2]

For the reasons set forth below, Indian Harbor's Petition is GRANTED, and Build Group's Motion to Stay or Dismiss is DENIED.

I. **Background**[3]

    **A. Factual Background**

        1. The Insurance Policy

Indian Harbor is a Delaware corporation with its principal place of business in Connecticut. (See Pet. ¶ 4.) Build Group is a California corporation with its principal place of business in California. (See id. ¶ 5.) On August 15, 2016, Indian Harbor issued a Subcontractor Default Insurance policy (the "Policy") to Build Group to insure against additional costs incurred in the event a subcontractor or supplier defaulted on a construction project. (See id. ¶ 10; Ex. 1 to the Kallal Decl. ("Ex. 1") [dkt. no. 4-1] at 16.)

The Policy included a provision titled "Dispute Resolution," setting forth the parties' obligations in the event of "[a]ny dispute or other matter in question . . . arising under, out of,

---

[2] (See also Declaration of Miles C. Holden in Support of Respondent Build Group, Inc.'s Opposition to Petitioner Indian Harbor Insurance Company's Petition to Compel Arbitration and Respondent Build Group Inc.'s Motion to Stay or Dismiss ("Holden Decl."), dated August 2, 2024 [dkt. no. 14-1].)

[3] The facts in this opinion are drawn primarily from the Petition and documents integral to the Petition of which this Court takes judicial notice. (See infra Part II(A)(1) (outlining summary judgment standard for motion to compel arbitration).)

in connection with or in relation to this Policy." (Ex. 1 at 20.) Pursuant to the Dispute Resolution provision, Indian Harbor and Build Group agreed that any such dispute "shall be submitted to mediation" by a mediator acceptable to both parties. (<u>Id.</u>)

As most relevant here, the provision goes on to state:

> [i]n the event that such mediation does not successfully resolve such dispute, the dispute will be submitted to arbitration within thirty (30) days of a request by either party to the other for such arbitration. The parties hereby agree to pursue such arbitration though the American Arbitration Association (AAA) in accordance with its then existing Commercial Arbitration Rules.

(<u>Id.</u>) The parties further agreed that "from the list of arbitrators provided by the AAA a panel of three (3) neutral arbitrators shall be agreed upon. In the event of disagreement as to the panel or any member thereof, the selection of that arbitrator or those arbitrators shall rest with the AAA." (<u>Id.</u>) With respect to the arbitrators' judgment, the Policy states that "[a] decision in writing signed by a majority of the arbitrators, when served upon both parties, shall be binding upon both and judgment thereon may be entered in any court having jurisdiction thereof." (<u>Id.</u>) Indian Harbor and Build Group agreed to "share equally in the payment of the fees of the arbitrators" with the "remaining costs of the arbitration [to] be paid, as the award shall direct." (<u>Id.</u>)

With respect to forum, the Dispute Resolution provision states that "[a]ny arbitration shall take place in New York unless

otherwise agreed." (Id.) Regarding choice of law, "[t]he arbitrators shall not be required or obliged to follow judicial formalities or the rules of evidence except to the extent required by governing law which is agreed between the parties to be the state law of the situs of the arbitration as herein agreed." (Id.)

As to a party's failure to agree to arbitration, the Policy provides:

> [f]ailure by the party receiving the request for arbitration to agree to such arbitration or state their reasons for not being prepared to submit to such process within the thirty (30) days following the receipt of the request for arbitration, shall be adjudged an acceptance of the other party's position and the terms associated therewith and an agreement to take such action as would be consistent with such acceptance.

(Id.)

Finally, Indian Harbor and Build Group agreed that they had "entered into this agreement by virtue of [the Dispute Resolution] clause to provide for a means of quickly settling disputes without resorting to litigation" and "unless and until an award has been rendered by such panel of arbitrators, no other action or legal proceeding shall be commenced in respect of any claim hereunder except with regard to resort to judicial intervention to enforce the terms of this Dispute Resolution clause." (Id.)

### 2. The Coverage Dispute

At some point following Indian Harbor's issuance of insurance to Build Group, Build Group tendered notice of a claim for coverage

under the Policy.  (Pet. ¶ 13.)  A dispute then arose between the parties with respect to the claim.  (Id. ¶ 14.)  On or around August 17, 2022, the parties unsuccessfully attempted to mediate the dispute.  (Id. ¶¶ 15-16.)

On May 7, 2024, Build Group filed a complaint against Indian Harbor in the Northern District of California, seeking declaratory relief and damages based on Indian Harbor's alleged failure to comply with its contractual obligations under the Policy.  (See Id. ¶ 17; Ex. 2 to the Kallal Decl. ("Ex. 2") [dkt. no. 4-2] at 16-21.)  In response, on June 27, 2024, Indian Harbor sent Build Group a formal demand to arbitrate the dispute.  (Pet. ¶ 19; Ex. 3 to the Kallal Decl. ("Ex. 3") [dkt. no. 4-3].)  Also on June 27, 2024, Indian Harbor filed the instant Petition, requesting this Court 1) issue an order compelling arbitration under 9 U.S.C. § 4; 2) retain jurisdiction over this case until a complete panel of arbitrators is formally constituted; and 3) enjoin Build Group from litigating the parties' dispute under the Policy in any venue other than before an arbitration panel sitting in New York.  (See Pet. at 7.)  Build Group opposed the Petition by requesting a stay of this action pending resolution of the proceedings in the Northern District of California and, in the alternative, seeking dismissal under Federal Rules of Civil Procedure 12(b)(2), (b)(3),

and (b)(6).  (See Opp'n at 1.)[4]  Indian Harbor replied. (See Pet. Reply.)

On August 28, 2024, the United States District Court for the Northern District of California (the "California District Court") granted Indian Harbor's motion to stay pending resolution of the Petition in this action.  See Build Group, Inc. v. Indian Harbor Insurance Co., 24-CV-02726 (N.D. Cal. Aug. 28, 2024).  In so holding, the California District Court explained that "Indian Harbor and Build Group have an arbitration agreement that incorporates the AAA's Commercial Arbitration Rules which delegate the question of arbitrability to the arbitrator."  Id.  Because Build Group had argued in the California action that the entire arbitration agreement was unconscionable under California law, neglecting to challenge the specific provision delegating arbitrability, the California District Court determined it was unable to consider Build Group's arguments.  See id.

_____

[4] Indian Harbor argues that Build Group's motion is improper because a petition to compel arbitration is a motion, rather than a pleading, such that Rule 12(b) does not apply. (Pet. Reply at 1 n.2.)  The Court construes Build Group's submission as both a brief in opposition to the Petition and a countermotion to stay or dismiss.  See Nat'l Union Fire Ins. Co. of Pittsburgh. v. Wynn Las Vegas, LLC, 509 F. Supp. 3d 38, 44 (S.D.N.Y. 2020) (construing response to petition to compel arbitration which included a request for dismissal as a countermotion to dismiss under Rule 12(b)).  Regardless of whether the Court were to evaluate Build Group's arguments for dismissal pursuant to the standard for a motion to compel or a motion to dismiss, the Court's conclusion would remain the same based on the clear language of the Dispute Resolution provision, as explained infra Parts II(A)-(C).

The Petition is fully briefed and ripe for adjudication.

## II.  **Discussion**

### A.    **Indian Harbor's Petition to Compel Arbitration**[5]

#### 1. Legal Standard

The Federal Arbitration Act ("FAA") provides that an arbitration provision in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[6] Section 4 of the FAA requires courts to compel arbitration in accordance with the terms of the arbitration agreement upon the motion of either party to the agreement, provided there is no issue regarding the making of the agreement. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (citing 9 U.S.C. § 4).

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular

---

[5] Given the Court's conclusion that it has personal jurisdiction over Build Group for purposes of these proceedings pursuant to the Dispute Resolution provision, see infra Part II(C), it addresses the Petition, premised on the Dispute Resolution provision, before Build Group's jurisdictional argument. See Wynn Las Vegas, 509 F.3d Supp. at 44-49 (considering motion to compel arbitration before jurisdictional issue).

[6] An insurance contract between corporations from different states gives rise to a finding of interstate commerce such that the FAA applies. See Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC, 967 F. Supp. 2d 756, 762 (S.D.N.Y. 2013).

controversy." <u>Henry Schein, Inc. v. Archer & White Sales, Inc.</u>,
586 U.S. 63, 67-68 (2019) (citation and internal quotation marks
omitted). However, the gateway question of "whether the parties
have agreed to arbitrate, i.e., the 'question of arbitrability,'
is an issue for judicial determination unless the parties clearly
and unmistakably provide otherwise." <u>Nicosia v. Amazon.com, Inc.</u>,
834 F.3d 220, 229 (2d Cir. 2016) (quoting <u>Howsam v. Dean Witter
Reynolds, Inc.</u>, 537 U.S. 79, 83 (2002)); <u>see also</u> <u>Henry Schein</u>,
586 U.S. at 69 ("This Court has consistently held that parties may
delegate threshold arbitrability questions to the arbitrator, so
long as the parties' agreement does so by 'clear and unmistakable'
evidence." (citation omitted)). This "threshold question . . .
is determined by state contract law principles." <u>Nicosia</u>, 834
F.3d at 229.[7]

---

[7] The Policy provides that the law of the situs of arbitration
applies and mandates that arbitration take place in New York unless
otherwise agreed. (Ex. 1 at 20.) Build Group disputes that New
York law applies to the Policy but provides no argument as to what
law the Court should consider in evaluating the arbitration
agreement, asserting only that California public policy provides
an insured with certain substantive rights that New York law does
not. (Opp'n at 3 n.1, 12.) "New York law . . . follows the same
standard as federal law with respect to who determines
arbitrability: generally, it is a question for the court unless
there is a clear and unmistakable agreement to arbitrate
arbitrability." <u>Contec Corp. v. Remote Sol., Co.</u>, 398 F.3d 205,
208 n.1 (2d Cir. 2005) (citation omitted). Given California law
generally follows the same standard, <u>see</u> <u>Kramer v. Toyota Motor
Corp.</u>, 705 F.3d 1122, 1127 (9th Cir. 2013), there is no conflict
between the purported competing jurisdictions, and the Court will
apply New York law in interpreting the Dispute Resolution (cont'd)

Arbitration is a "matter of consent," Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp., 67 F.4th 107, 113 (2d Cir. 2023), and may be compelled "only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must [ ] respect the parties' decision as embodied in the contract." DDK Hotels, LLC v. Williams-Sonoma, Inc., 6 F.4th 308, 316-17 (2d Cir. 2021) (citation omitted).

In deciding petitions to compel, "court[s] apply a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). "The summary judgment standard requires a court to consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits. In doing so, the court must draw all reasonable inferences in favor of the non-moving party." Nicosia, 834 F.3d at 229 (quotation marks and citations omitted).

---

(cont'd) provision. See Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004).

"If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." <u>Bensadoun</u>, 316 F.3d at 175 (citing 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.")).  "[B]ut where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'"  <u>Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.</u>, 661 F.3d 164, 172 (2d Cir. 2011) (quoting <u>Bensadoun</u>, 316 F.3d at 175).

### 2. <u>Analysis</u>

Indian Harbor seeks to compel Build Group to submit to arbitration, arguing the Policy's Dispute Resolution provision mandates that the arbitrator determine the arbitrability question—in other words, whether the parties agreed to arbitrate.  (Pet. Br. at 6.)  Build Group objects, arguing the provision is ambiguous and does not explicitly delegate the issue of arbitrability. (Opp'n at 17-18.)  The Court concludes there is clear and unmistakable evidence that Indian Harbor and Build Group agreed to commit the issue of arbitrability to the arbitrator rather than the courts.

As an initial matter, it is undisputed that Indian Harbor and Build Group entered into the Policy and that the Policy contains the Dispute Resolution provision.  The Dispute Resolution

provision states that in the event mediation fails to resolve "[a]ny dispute or other matter in question . . . arising under, out of, in connection with or in relation to this Policy," the parties agree to "pursue such arbitration though the American Arbitration Association (AAA) in accordance with its then existing Commercial Arbitration Rules." (Ex. 1 at 20.) Rule 7 of the American Arbitration Association ("AAA") Commercial Arbitration Rules in turn states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Comm. Arb. R-7(a).

The Court of Appeals has repeatedly determined that this arrangement—whereby the arbitration agreement explicitly incorporates rules which delegate the issue of arbitrability to the arbitrator—is clear and unmistakable evidence of the parties' intent to commit that issue to the arbitrator. See Contec Corp., 398 F.3d at 208 (2d Cir. 2005) (parties' incorporation of AAA Rules evinced their intent to delegate arbitrability to the arbitrator based on Rule 7); Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 122 (2d Cir. 2003) (agreement incorporated international arbitration rules which delegated question of arbitrability); PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1202 (2d Cir. 1996)

(National Association of Securities Dealers Code committed issue of arbitrability to arbitrator).

The broad language of the Dispute Resolution provision also counsels in favor of compelling arbitration. The Dispute Resolution provision applies to "[a]ny dispute or other matter in question . . . arising under, out of, in connection with or in relation to this Policy[.]" (Ex. 1 at 20.) This wording, read in conjunction with the parties' agreement that such disputes "will be submitted to arbitration within thirty (30) days of a request by either party to the other for such arbitration" (id.), is undoubtedly broad. See Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC, No. 11 CIV. 7801 PAE, 2012 WL 1231775, at *8 n.5 (S.D.N.Y. Apr. 12, 2012) (recognizing that "it is hard to imagine a more broadly worded arbitration clause than" a clause—similar to the one at issue here—which stated "'all disputes arising out of or in connection with the present contract' are subject to arbitration"). Where, as here, "the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes" and is "coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability," the Court of Appeals has found "clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." DDK Hotels, 6 F.4th at 318-19.

Build Group protests that there is no clear delegation clause in the Dispute Resolution provision because it requires each party to "agree" to arbitrate as a condition necessary to arbitration. (Opp'n at 17-18.) Specifically, the language mandates that disputes "will be submitted to arbitration within thirty (30) days of a request by either party to the other for such arbitration. The parties hereby agree to pursue such arbitration through the [AAA] in accordance with its then existing Commercial Arbitration Rules." (Ex. 1 at 20.) Build Group's reading strains the language beyond any reasonable interpretation. Build Group agreed to arbitrate its disputes with Indian Harbor by entering into the Policy.

Build Group also argues that the portion of the provision stating the "[f]ailure by the party receiving the request for arbitration to agree . . . shall be adjudged an acceptance of the other party's position" indicates each party may opt out of arbitration. (Opp'n at 17-18 (citing Ex. 1 at 20).) Similarly, this tortured interpretation of the plain language is unavailing. Rather than suggesting a party may opt out of arbitration, the provision sets forth the default consequences of a party's failure to agree to arbitration.

Other language within the Dispute Resolution provision reinforces the Court's conclusion that arbitration is mandatory, for example the parties' explicit agreement to the Dispute

Resolution clause for purposes of "provid[ing] for a means of quickly settling disputes without resorting to litigation." (Ex. 1 at 20.)   The parties' agreement that unless and until an arbitration award has been rendered, "no other action or legal proceeding shall be commenced in respect of any claim hereunder except with regard to resort to judicial intervention to enforce the terms of this Dispute Resolution clause," also makes their intent to arbitrate clear. (Id.)

Ultimately, the unquestionably broad language of the Dispute Resolution provision, coupled with the provision's incorporation of the AAA rules, is clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator.

**B.    Build Group's Request for a Stay**

1. Legal Standard

The "first-filed rule states that, in determining the proper venue, [w]here there are two competing lawsuits, the first suit should have priority." New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks omitted).   The rule "avoids duplicative litigation by adhering to the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue." Ontel Products, Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995).   "In determining

14

if the first-filed rule applies, the court must carefully consider whether in fact the suits are duplicative." Fit & Fun Playscapes, LLC v. Sensory Path, Inc., No. 19 Civ. 11697, 2022 WL 118257, at *3 (S.D.N.Y. Jan. 12, 2022) (citation omitted). "Application of the rule requires that both cases have identical or substantially similar parties and claims." Id. (citing In re Cuyahoga Equipment Corp., 980 F.2d 110, 116-17 (2d Cir. 1992)).

However, the first-filed rule is not "an invariable mandate" but rather a "presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008) (internal quotation marks omitted). The Court of Appeals "has recognized two exceptions to the first-filed rule: (1) where the 'balance of convenience' favors the second-filed action, and (2) where there are 'special circumstances,' such as where the first-filing plaintiff files an 'improper anticipatory action' in an apparent effort to win the race to the courthouse, or 'where forum shopping alone motivated the choice of situs for the first suit.'" Fit & Fun Playscapes, 2022 WL 118257, at *3 (quoting Emp'rs Ins. of Wausau, 522 F.3d at 275-76)).

2. Analysis

Even assuming that there is substantial overlap between the parties and claims in this action and the lawsuit in California

District Court,[8] several circumstances justify departure from the first-filed rule. First, the California District Court has already stayed that action pending resolution of the instant Petition, determining it was unable to weigh in on Build Group's arguments due to the delegation clause in the parties' arbitration agreement. See Build Group, Inc. v. Indian Harbor Insurance Co., 24-CV-02726 (N.D. Cal. Aug. 28, 2024). It would therefore be both illogical and a waste of judicial resources for the Court to stay this action which seeks to compel arbitration, pending resolution of the action in California.

Second, as the California District Court recognized, the Policy's Dispute Resolution provision mandates that the parties submit to arbitration, in the event mediation does not successfully resolve a dispute between them arising out of the policy. (See id.; Ex. 1 at 20.) As discussed supra Part II(A), as part of their agreement, Build Group and Indian Harbor promised not to commence any action or legal proceeding unless and until the arbitrators

---

[8] With respect to the parties, the California action involves the same parties as the instant Petition. (See Ex. 2.) Regarding the claims, Build Group initiated the California action to seek declaratory relief and damages (see Ex. 2) and Indian Harbor commenced this action to compel arbitration. However, the court in Raytheon determined the first-filed rule applied in similar circumstances where both actions involved the application of an arbitration clause, before ultimately determining circumstances justified departure from the rule. Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 306 F. Supp. 2d 346, 353-60 (S.D.N.Y. 2004).

rendered an award, "except with regard to resort to judicial intervention to enforce the terms of this Dispute Resolution clause." (Ex. 1 at 20.) In contravention of the Dispute Resolution provision, Build Group initiated a lawsuit again Indian Harbor in the Northern District of California for its alleged failure to comply with its contractual obligations under the Policy. Under these circumstances, "[i]t would contravene the policies embodied in the FAA to penalize the party seeking to compel arbitration in accordance with the terms of an arbitration agreement." Raytheon, 306 F. Supp. 2d at 355.

Finally, the Policy requires that arbitration occur in New York unless otherwise agreed and provides that the law of the situs of arbitration governs. (Ex. 1 at 20.) These components of the parties' agreement also indicate this Court, rather than the California court, should consider the arbitrability of the dispute.

Given "[t]he first-filed rule is a technical rule relating to the conservation and efficient allocation of judicial resources," the Court concludes "[t]here is no basis [ ] to mechanically apply the rule in direct contravention of the overriding policy favoring the speedy resolution of disputes regarding arbitrability." Raytheon, 306 F. Supp. 2d at 355.

### C.   Build Group's Motion to Dismiss

#### 1. Motion to Dismiss Under Rule 12(b)(2)

##### a. Legal Standard

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." Id. at 85-86 (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).

"In evaluating whether the requisite showing has been made," the Court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013). "[C]ourts may rely on . . . materials outside the pleading[s] when ruling on 12(b)(2) motions." Mount Whitney Invs.,

LLLP v. Goldman Morgenstern & Partners Consulting, LLC, No. 15 Civ. 4479 (ER), 2017 WL 1102669, at *3 (S.D.N.Y. Mar. 23, 2017).

Personal jurisdiction is analyzed under a two-step inquiry. First, the Court must determine whether the exercise of personal jurisdiction is proper under the laws of the forum state—here, New York. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007). If so, the Court must then determine "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014).

It is well established that "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985) ("because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court," including by "stipulat[ing] in advance to submit their controversies for resolution within a particular jurisdiction") (internal quotation marks and citations omitted). "Where an agreement contains a valid and enforceable forum selection clause, . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." Gordian Grp., LLC v.

19

<u>Syringa Expl., Inc.</u>, 168 F. Supp. 3d 575, 581 (S.D.N.Y. 2016) (citation omitted).  Instead, "[a]n enforceable forum selection clause amounts to consent to personal jurisdiction." <u>Id.</u> (citation omitted).

To determine whether a forum selection clause is valid and enforceable, a court considers:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any [ ] dispute to the designated forum or simply <u>permitted</u> to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause.

<u>NuMSP, LLC v. St. Etienne</u>, 462 F. Supp. 3d 330, 343 (S.D.N.Y. 2020) (quoting <u>Martinez v. Bloomberg LP</u>, 740 F.3d 211, 217 (2d Cir. 2014)).  "If the forum clause was communicated to the resisting party, has mandatory force[,] and covers the claims and parties involved in the dispute, it is presumptively enforceable." <u>Martinez</u>, 740 F.3d at 217 (quotation omitted).  "A party can overcome this presumption only by [] 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" <u>Id.</u> (citation omitted).  In evaluating this showing, courts consider whether:

> (1) [the forum selection clause's] incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit

is brought; or (4) trial in the selected forum will be so
difficult and inconvenient that the plaintiff effectively
will be deprived of his day in court.

Du Quenoy v. Am. Univ. of Beirut, 828 F. App'x 769, 771 (2d. Cir.
2020) (summary order) (quoting Martinez, 740 F.3d at 228).

    With respect to agreements to arbitrate, the Court of Appeals
has explained that "[w]hen a party agrees to arbitrate in a state,
where the Federal Arbitration Act makes such agreements
specifically enforceable, that party must be deemed to have
consented to the jurisdiction of the court that could compel the
arbitration proceeding in that state.  To hold otherwise would be
to render the arbitration clause a nullity." Doctor's Assocs., 85
F.3d at 979.  However, a party's agreement to arbitrate a dispute
in a particular state "does not indicate consent to engage in
regular litigation in that state of the otherwise arbitrable
dispute.  Rather any jurisdictional consent 'goes no farther than
proceedings relating to enforcement of the arbitration
agreement.'" Pharma Partners, LTD v. Liposeuticals Inc., No. 19-
CV-5735, 2020 WL 2836771, at *2 (S.D.N.Y. June 1, 2020) (citation
omitted).

              b. Analysis

    The Petition asserts that this Court has personal
jurisdiction over Build Group by virtue of the Dispute Resolution
provision in the Policy.  (Pet. ¶ 7.)  In seeking to dismiss the
Petition, Build Group argues that it cannot be deemed to have

consented to the jurisdiction of this Court because the Dispute Resolution provision is unenforceable.  (Opp'n at 6.)  The Court concludes that it may exercise personal jurisdiction over Build Group for these proceedings related to the enforcement of the parties' arbitration agreement.

As discussed <u>supra</u> Part II(B), the Dispute Resolution provision requires the parties to arbitrate all disputes arising out of the Policy and mandates that "[a]ny arbitration shall take place in New York unless otherwise agreed."  (Ex. 1 at 20.)  Build Group does not appear to deny that the forum selection clause was "communicated to the resisting party, has mandatory force[,] and covers the claims and parties involved in the dispute" such that it is "presumptively enforceable."  <u>Martinez</u>, 740 F.3d at 217 (quotation omitted).  Instead, Build Group attempts to overcome this presumption by arguing that this matter should be resolved in California based on the facts that give rise to the coverage dispute.  (Opp'n at 7.)  Build Group also claims Build Group lacked a meaningful choice as to the "restrictions and burdens in the [Dispute Resolution] provision" and that the entire Dispute Resolution provision is unconscionable.  (<u>Id.</u>)  In support of its unconscionability argument, Build Group asserts the provision is procedurally unconscionable because the parties did not have equal bargaining power and Build Group had limited options on the market and the provision is substantively unconscionable because it

requires travel to New York, eliminates appellate rights, and mandates that Build Group pay half of three arbitrators' fees. (Id. at 14-17.)[9]

None of Build Group's arguments specifically challenge the Dispute Resolution's delegation provision, the provision incorporating the AAA rules which in turn empower the arbitrator to "rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement[.]"   AAA Comm. Arb. R-7(a).[10]   Where an agreement delegates questions of enforceability or unconscionability to an arbitrator, a court may only consider a party's enforceability or unconscionability arguments where they are specific to the delegation provision.   See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 71-72 (2010) (determining that unconscionability challenges to portions of an arbitration agreement other than the delegation provision constituted challenges to the agreement as a whole and should be left to the arbitrator); Billboard Media, LLC v. Wray, No. 23 CIV. 7809, 2024 WL 4299048, at *2 (S.D.N.Y. Sept. 25, 2024) ("the party's argument must be 'specific to the delegation provision' to be considered, and it will only be

---

[9] According to Build Group, the Policy as a whole is generally enforceable; only the Dispute Resolution provision is not. (Opp'n at 14 n.6.)
[10] Build Group baldly asserts that the delegation provision is "unconscionable and unenforceable" (id. at 1), but offers no explanation in support of this claim.

considered as applied to the delegation provision itself." (citation omitted)).   Because the Dispute Resolution clause's delegation clause unambiguously incorporates rules that designate issues of enforceability and unconscionability to the arbitrator, the Court may not consider Build Group's arguments that the entire Dispute Resolution provision is unenforceable or unconscionable. See <u>UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.</u>, 660 F.3d 643, 655 (2d Cir. 2011) (recognizing that "the interpretation of forum selection clauses in arbitration agreements raise presumptively arbitrable procedural questions").[11]

Even assuming the Court were to consider Build Group's unenforceability and unconscionability arguments, the Court concludes they are insufficient to make out a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." <u>Martinez</u>, 740 F.3d at 217.   Build Group agreed to a Policy with an

---

[11] Build Group's motion to dismiss under 12(b)(6) is based on the same arguments—that the Dispute Resolution provision is unconscionable and unenforceable.   (Opp'n at 13.)   As explained, none of Build Group's assertions concern the Dispute Resolution's delegation provision.     Absent a specific challenge to the delegation provision, the Court may not consider Build Group's arguments. See <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 943–47 (1995) ("[A] court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration" and only where the parties "did not clearly agree to submit the question of arbitrability to arbitration" was the dispute "subject to independent review by the courts").   Build Group's motion to dismiss for failure to state a claim is denied.

unambiguous Dispute Resolution clause which required it to submit to arbitration in New York, unless otherwise agreed. Build Group's contentions that it had limited options on the market, is based in California, and the facts giving rise to the coverage dispute occurred in California are together insufficient to overcome the presumption in favor of the forum-selection clause mandating arbitration. See Du Quenoy, 828 F. App'x at 771.

Furthermore, the Court's exercise of jurisdiction over Build Group in the instant action is limited to "proceedings relat[ed] to enforcement of the arbitration agreement." Pharma Partners, 2020 WL 2836771, at *2. Build Group's motion to dismiss for lack of personal jurisdiction is denied.[12]

### D. Indian Harbor's Request for a Stay

The Court of Appeals has determined that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Katz v. Cellco Partnership, 794 F.3d 341, 347 (2d Cir. 2015). Given the Court's conclusion that the Policy mandates Build Group submit to arbitration, see

---

[12] Build Group makes the conclusory assertion that "venue is improper" and purports to move to dismiss the Petition under Rule 12(b)(3) but makes no argument in support of this contention. (Opp'n at 1, 5.) Regardless, "[a] party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction." Doctor's Assocs., 85 F.3d at 983. Build Group's motion to dismiss for improper venue is denied.

supra Part II(A), and Indian Harbor's request for this Court to temporarily retain jurisdiction over this action (Pet. at 7), the Court imposes a stay of this litigation in its entirety until a complete panel of arbitrators is formally constituted.  The parties shall promptly submit a joint letter advising the Court at the time a complete panel of arbitrators is formally constituted.

However, because the Court's exercise of personal jurisdiction over Build Group is limited, see supra Part II(C), Indian Harbor's request for this Court to enjoin Build Group from litigating the parties' dispute under the Policy in any venue other than before an arbitration panel sitting in New York is denied.

III.  **Conclusion**

For the foregoing reasons, Petitioner Indian Harbor's Petition is GRANTED, and Respondent Build Group's Countermotion to Dismiss is DENIED.  Indian Harbor's request for this Court to enjoin Build Group from litigating the parties' dispute under the Policy in any venue other than before an arbitration panel sitting in New York is DENIED.  Effective immediately, the Court imposes a stay of this litigation in its entirety, pending receipt of a letter from the parties advising the Court that a complete panel of arbitrators has been formally constituted.

The Clerk of the Court is respectfully directed to close docket number 3.

**SO ORDERED.**

Dated:    March 11, 2025
          New York, New York

_Loretta A. Preska_
_____
LORETTA A. PRESKA
Senior United States District Judge